**Douglas LEHMANN and Virginia Lehmann, Appellants,**

v.

**HAR–CON CORPORATION, Appellee.**

No. 14–98–00666–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 14, 2002.

Howard R. King, Houston, for appellants.

Henry S. Platts, Jr., James E. Simmons, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellants Douglas Lehmann and Virginia Lehmann appeal from the trial court's grant of appellee Har–Con Corporation's motion for summary judgment and denial of the Lehmann's motion for summary judgment on the effect of a release and indemnity agreement on the claims of the

Lehmann's minor son, Russell Lehmann, for loss of parental consortium. We affirm.

## BACKGROUND

Douglas and Virginia Lehmann sued the University of St. Thomas and Har–Con Corporation in the district court in Harris County to recover damages for injuries Douglas suffered in a construction accident. The Lehmanns subsequently settled with Har–Con and executed a release, agreeing in part to indemnify Har–Con against certain claims that had been or could be asserted by or through them. Virginia then filed an amended petition on behalf of her minor son, Russell Lehmann, against both defendants, claiming damages for loss of parental consortium because of his father's injuries. In response, Har–Con filed a counterclaim against Virginia and a third-party petition against Douglas, seeking indemnity from them under the terms of their prior release.

The Lehmanns and Har–Con all moved for summary judgment on Har–Con's indemnity claims. The district court denied the Lehmanns' motion and granted Har–Con's motion. On the Lehmanns' motion, the trial court severed all of Har–Con's claims against them into the case that is at issue here. The Lehmanns filed an appeal in the severed case, which this court dismissed for lack of jurisdiction in *Lehmann v. Har–Con Corp.,* 1998 WL 429853 (Tex. App.—Houston [14th Dist.] 1998). We subsequently overruled the Lehmanns' motion for rehearing in a published opinion, *Lehmann v. Har–Con Corp.,* 988 S.W.2d 415 (Tex.App.—Houston [14th Dist.] 1999).

The Lehmanns filed a petition for review with the Texas Supreme Court, which reversed the dismissal and remanded the case. *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191 (Tex.2001). We now consider the merits of the Lehmanns' appeal.

## DISCUSSION

The Lehmanns complain for the following reasons that the trial court erred in granting Har–Con's motion for summary judgment and denying their motion for summary judgment: (1) the indemnity provision in question does not satisfy the specificity requirements of Texas law; (2) Russell Lehmann's claim is not a claim "by" or "through" his parents; and (3) the indemnity provision violates public policy related to the settlement of a minor's claim.

### 1. Standard of Review

When both parties file motions for summary judgment, the proper disposition is for the appellate court to render judgment for the party whose motion should have been granted. *Members Mutual Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984). A court is limited to those grounds expressly set forth in the summary judgment motions to determine whether the summary judgment was properly granted. *McConnell v. Southside School Dist.,* 858 S.W.2d 337, 343 (Tex.1993). When summary judgment is sought in a contract dispute, if neither party alleges that the contract is ambiguous, its construction is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). In this situation, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. *Id.*

### 2. The Release of All Claims

On July 15, 1997, Douglas and Virginia Lehmann executed a document entitled "Release of All Claims" (the "Release") in favor of Har–Con "for any and all causes of action of whatever nature, whether in

contract or tort," on account of an accident involving Douglas Lehmann, which occurred on or about June 27, 1994, on the premises of the University of St. Thomas in Houston, Texas. In consideration for the release and settlement of the Lehmanns' claims, Har–Con agreed to pay $875,000.

The Release included the following paragraph in all capitals and double-spaced:

AS PART OF THE CONSIDERATION FOR THE PAYMENT OF THE ABOVE SUM OF MONEY, FOR OURSELVES, OUR HEIRS EXECUTORS, LEGAL REPRESENTATIVES, ADMINISTRATORS, SUCCESSORS AND ASSIGNS, DOUGLAS LEHMANN AND VIRGINIA LEHMANN, HEREBY INDEMNIFY AND HOLD HARMLESS EACH AND ALL OF THE PARTIES HEREBY RELEASED FROM ANY AND ALL CLAIMS, DEMANDS, ACTIONS AND/OR CAUSES OF ACTION OF WHATSOEVER NATURE OR CHARACTER, INCLUDING ACTIONS FOR INTERVENTION AND/OR THOSE CLAIMS, DEMANDS, ACTIONS AND/OR CAUSES OF ACTION DUE TO THE SOLE NEGLIGENCE OF DEFENDANT, WHICH HAVE BEEN OR MAY HEREAFTER BE ASSERTED BY U.S. OR ANY PERSON, FIRM OR CORPORATION CLAIMING THROUGH U.S. IN CONNECTION WITH THE AFORESAID INCIDENT, INCLUDING BUT NOT LIMITED TO ANY CLAIM FOR LOSS OF CONSORTIUM, ALL HOSPITAL LIENS, MEDICAL INSURANCE SUBROGATION OR ANY OTHER VALID, INVALID OR EXISTING LIEN OR CLAIM. THIS INDEMNITY OBLIGATION HAS NO APPLICATION AND DOES NOT APPLY TO THE CROSS CLAIM BEING PURSUED BY THE UNIVERSITY OF St. THOMAS AGAINST HAR–CON CORPORATION SEEKING INDEMNITY AND COVERAGE AS AN ADDITIONAL INSURED.

In addition, the Release included the representation that the Lehmanns were fully informed of its terms, contents, conditions and effects, and that they relied "solely and completely" on their own judgment and the advice of counsel.

### 3. The Issues

#### a. *Is the Release's indemnity provision unenforceable?*

In their first and second issues, the Lehmanns contend that the trial court erred in granting Har–Con's motion for summary judgment and denying their motion for summary judgment, because the indemnity provision in the Release does not satisfy the express negligence doctrine and is otherwise not specific enough to be enforced. Har–Con responds that the express negligence doctrine does not apply to a post-accident release and indemnity agreement, and that even if it does apply, the provision satisfies its requirements.

Relying primarily on *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex.1993), the Lehmanns argue that the provision is a type of risk-shifting provision to which the express negligence rule applies. We agree that *Dresser* and its progeny are instructive, but disagree that the express negligence rule applies.

In 1987, the Texas Supreme Court adopted the express negligence test for determining whether the parties to an indemnity contract intended to exculpate the indemnitee from the consequences of it own negligence. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 706 (Tex. 1987). The express negligence doctrine provides that a party demanding indemni-

ty from the consequences of its own negligence must express that intent in specific terms. *Id.* at 708. Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract. *Id.* Subsequently, in *Dresser*, the court extended the "fair notice" requirements of the express negligence doctrine and conspicuousness to releases as well as indemnity agreements. *Dresser*, 853 S.W.2d at 509.[1]

However, the *Dresser* court expressly limited the application of the express negligence doctrine and the conspicuousness requirement to those releases and indemnity agreements that relieve a party *in advance* of liability for its own negligence. *Id.* at 507 n. 1 ("Today's opinion applies the fair notice requirements to indemnity agreements and releases only when such exculpatory agreements are utilized in advance."). In *Green Int'l, Inc. v. Solis*, the Supreme Court later reaffirmed that *Dresser* was "explicitly limited to releases and indemnity clauses in which one party exculpates itself from its own *future negligence*." 951 S.W.2d 384, 387 (Tex.1997) (emphasis added).

The Lehmanns argue that it is evident the indemnity provision was intended to protect Har–Con from future liability because Russell's claims were not filed until after the indemnity was executed. Therefore, the Lehmanns contend, the express negligence doctrine applies. However, we have previously rejected this reasoning in *Martinez v. Gulf States Utility Co.*, 864 S.W.2d 802, 805–06 (Tex.App.—Houston [14th Dist.] 1993, writ denied). In that case, a lawsuit arose after two individuals were injured and another died after acci-

dentally touching a high voltage wire while attempting to repair a water well. During the course of the lawsuit, the plaintiffs entered into a settlement with the estate of the landowner and the executrix of the estate, Pamela Mendez, in which the plaintiffs agreed to release the estate and Mendez from liability for any claims arising out of the accident and "any cross actions seeking contribution and indemnity" or other claims made against the defendants arising out of the facts made the basis of the suit. Defendant Gulf States Utility Company then obtained a summary judgment on its cross-action for indemnity against the estate and Mendez. On appeal, the plaintiffs claimed that, among other things, the release failed to meet the express negligence doctrine mandated in *Ethyl*. Noting that the purpose of the express negligence doctrine was to prevent surprise to the indemnitor, we reasoned that the doctrine was not applicable in *Martinez* because the appellants could not claim surprise by the utility company's cross-claim, as the contract expressly indemnified the estate from all claims that accrued as a result of the accident, and the release expressly contemplated cross-actions seeking indemnity. *Id.* at 805. On the basis that the plaintiffs' liability was certain, we distinguished the *Martinez* indemnity agreement, which provided indemnity for liability based on the accident in which the plaintiffs were injured, from the indemnity agreement in *Ethyl*, which provided indemnification for indefinite future liability. *Id.* at 805–06.

Even more factually analogous is *Lexington Ins. Co. v. W.M. Kellogg Co.*, 976

---

**1.** The fair notice requirement of conspicuousness requires that the release or indemnity be written such that a reasonable person against whom it is to operate ought to have noticed it. *Dresser*, 853 S.W.2d at 510–11. For example, language in capital headings, language in

contrasting type or color, and language in an extremely short document, such as a telegram, is conspicuous. *Id.* The Lehmanns do not contend the indemnity provision does not satisfy the conspicuousness requirement.

S.W.2d 807 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). In that case, Kellogg and Lexington entered into a settlement that released Kellogg from liability arising out of its construction of an ethylene manufacturing plant for Lexington. Two years later, there was an explosion at the plant that caused physical damage and lost production. Lexington filed a lawsuit alleging that Kellogg and others negligently designed and constructed the plant, and sought to avoid the effect of the release on the ground that it did not satisfy the fair notice requirements. Citing *Dresser* and *Solis,* the *Lexington* court disagreed, holding that the fair notice requirements did not apply to the release and that Lexington's claims were barred. *Id.* at 809. As the *Lexington* court explained, the release was signed after the acts that could give rise to liability were completed, and the case involved only alleged negligence committed before the release was signed. *Id.*[2]

■ As in *Martinez* and *Lexington,* we look to the acts giving rise to the injury, not the date when a claim is filed, to determine whether the express negligence doctrine applies. Here, it is undisputed that the accident in which Douglas Lehmann was injured (and from which Russell's claim arises) occurred before the Release was executed. Further, as we discuss in greater detail below, the indemnity provision of the Release expressly references claims for loss of consortium; therefore, the Lehmanns cannot claim

surprise. We reject the Lehmanns' argument.

■ The Lehmanns also contend that Har–Con must have believed that the express negligence doctrine applied because Har–Con attempted to comply with the fair notice requirement of conspicuousness by using the phrase "sole negligence" and drafting the paragraph in all capital letters. We reject this argument as well. The Lehmanns offer no authority for the proposition that a drafter's presentation can supplant Texas law on the construction and interpretation of contracts. It may well be that the drafter was attempting to comply with the fair notice requirements in an abundance of caution, and we see no reason to unnecessarily penalize Har–Con for employing cautious counsel.

■ Accordingly, we hold that the express negligence doctrine does not apply to the Release. We therefore construe the Release under the normal rules of contract construction. *See Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 423 (Tex. 2000); *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 284 (Tex.1998). Our primary goal is to ascertain and to give effect to the intentions of the parties as expressed in the contract. *Gulf Ins.,* 22 S.W.3d at 423; *Ideal Lease Serv., Inc. v. Amoco Production Co., Inc.,* 662 S.W.2d 951, 953 (Tex.1983). We may not expand the parties' rights or responsibilities beyond the limits agreed upon by them in the contract. *Ideal Lease,* 662 S.W.2d at 953. Further, we must construe

2. We are aware that the Fifth Circuit has concluded that "Texas law concerning indemnification for past acts giving rise to potential future liability is at best unclear" and thus speculates that "Texas would apply the 'express negligence' test to all claims that were merely prospective at the time the indemnity provision was signed." *Fina, Inc. v. ARCO,* 200 F.3d 266, 272 n. 21 & 273 (5th Cir.2000). We cannot agree. The conclusion that the

express negligence doctrine must be satisfied whenever there are *existing* but *not yet filed* claims at the time the release or indemnity is executed is overly formalistic and contrary to the public policy favoring settlements as a means of amicably resolving doubts and preventing lawsuits. *See Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 855 (Tex.1980) (Campbell, J., concurring).

the indemnity provision to provide a common sense reading. *Melvin Green, Inc. v. Questor Drilling Corp.,* 946 S.W.2d 907, 910 (Tex.App.—Amarillo 1997, no writ). Its terms must be given their plain, ordinary, and generally accepted meaning unless the Release shows otherwise. *Id.*

■ The Lehmanns argue that the indemnity provision provides indemnity only for the "sole" negligence of Har–Con, and because Russell Lehmann is claiming that Har–Con and the University of St. Thomas were jointly, concurrently, and grossly negligent, the indemnity provision does not apply. Further, they contend that the use of the word "including" before the reference to sole negligence cannot substitute for express references to each possible shade or variation of negligence. However, the portion of the indemnity provision the Lehmanns rely upon plainly contradicts their argument. Among other things, the indemnity applies to

ANY AND ALL CLAIMS, DEMANDS, ACTIONS AND/OR CAUSES OF ACTION OF WHATSOEVER NATURE OR CHARACTER, INCLUDING ACTIONS FOR INTERVENTION AND/OR THOSE CLAIMS, DEMANDS, ACTIONS OR CAUSES OF ACTION DUE TO THE SOLE NEGLIGENCE OF DEFENDANT....

The indemnity provision thus *includes* claims of sole negligence, but it does not so limit the indemnity to only those types of claims. Even if the express negligence rule were to apply to the indemnity, this wording would be sufficient to give the Lehmanns notice that Har–Con intended to be indemnified for claims arising from its own negligence. Har–Con would not be required, as the Lehmanns suggest, to include additional references to every possible form its negligence could take, such as "concurrent negligence" or "joint negligence." Such a requirement would unnecessarily complicate the obvious conclusion that Har–Con sought indemnity for its negligence, even to the extent of sole negligence.

■ Further, the Texas Supreme Court has expressly rejected the Lehmanns' argument in *Atlantic Richfield Co. v. Petroleum Pers., Inc.,* 768 S.W.2d 724 (Tex. 1989). There, the court found that a contractual indemnity that included "any negligent act of ARCO" satisfied the express negligence doctrine, even though it did not differentiate between degrees of negligence. *Id.* at 726. As the court explained, "[u]sage of the terms 'joint,' 'concurrent' or 'comparative contractual' would not add to the expression of intent to exculpate ARCO for its negligence." [3] *Id.* Therefore, we hold that the language "including ... causes of action due to the sole negligence of defendant" sufficiently covers claims against Har–Con for negligence, regardless of the degree of its participation in the alleged negligent acts.

We overrule the Lehmanns' first and second issues.

### b. Is Russell's claim one "by" or "through" his parents?

In their third and fourth issues, the Lehmanns contend that the trial court erred in granting Har–Con's motion for summary judgment and denying their mo-

---

**3.** Indeed, courts have held that the express negligence doctrine does not require that the indemnity provision use the specific word "negligence." *Banzhaf v. ADT Security Sys. Southwest, Inc.,* 28 S.W.3d 180, 189 (Tex. App.—Eastland 2000, pet. denied) (citing *Arthur's Garage, Inc. v. Racal–Chubb Security Sys., Inc.,* 997 S.W.2d 803, 814 (Tex.App.— Dallas 1999, no pet.)). The test is whether the parties made it clear in the agreement that it was their intent to provide for indemnification of the indemnitee's own negligent acts. *Id.* (citing *Enserch Corporation v. Parker,* 794 S.W.2d 2, 8 (Tex.1990)).

tion for summary judgment because Russell Lehmann's claim is not one "by" or "through" his parents, but is an independent claim for emotional harm he has suffered as a consequence of his father's injuries. The Lehmanns argue that the "by" or "through" language of the indemnity provision suggests that it only applies to those persons in privity with the Lehmanns' individual causes of action against Har–Con. Additionally, the Lehmanns contend that Russell's claim is analogous to a spouse's loss of consortium claim, a claim that is exclusively the right of the deprived spouse and is not a claim that can be brought by or through the injured spouse.

 In her fourth amended petition, Virginia Lehmann, as next friend of Russell Lehmann, made a claim for "loss of his father's love, affection, protection, emotional support, services, companionship, care, and society...." The Texas Supreme Court recognized such a claim as one for loss of parental consortium seven years earlier. *Reagan v. Vaughn,* 804 S.W.2d 463, 466 (Tex.1990). The indemnity provision specifically states that it includes claims that may be asserted "by" Douglas or Virginia Lehmann or "any person ... claiming through [them] in connection with the aforesaid incident, including but not limited to any claim for loss of consortium." [4] Therefore, the indemnity expressly includes claims for loss of consortium by those claiming "through" Douglas or Virginia Lehmann.

In recognizing a claim for loss of parental consortium, the *Reagan* court drew upon the analogous claim of loss of spousal consortium. *Id.* at 465–66 (citing *Whittlesey v. Miller,* 572 S.W.2d 665, 667 (Tex. 1978)). And, just as it had held that a claim for loss of spousal consortium is derivative of the injured spouse's claim, the court held that a cause of action for loss of parental consortium is derivative of the parent's claim for personal injuries. *Id.* (citing *Whittlesey,* 572 S.W.2d at 667). Accordingly, the *Reagan* court explained that in order to recover,

> the child must prove that the defendant is liable for the personal injuries suffered by her parent, and any defense that tends to constrict or exclude the defendant's liability to the injured parent will have the same effect on the child's consortium action.

*Id.* On rehearing, the court reiterated that because the cause of action for loss of parental consortium, like loss of spousal consortium, is derivative, the defenses that bar all or part of the injured parent's recovery have the same effect on the child's recovery. *Id.* at 468.

However, as the supreme court explained in *Whittlesey,* while the wife's claim for loss of consortium is considered to be derivative of the impaired spouse's negligence action to the extent that the tortfeasor's liability to the impaired spouse must be established, the consortium action is, nevertheless, independent and apart from that of the impaired spouse's negli-

---

4. Given this language, it is difficult to imagine that the Lehmanns would not have recognized that a loss of consortium claim by Russell was included in the provision. At oral argument, the Lehmanns' counsel argued that the reference to loss of consortium claims meant Virginia Lehmann's loss of consortium claim. However, Virginia Lehmann settled her claims, and it makes no sense for the Lehmanns to provide indemnity for a claim that is settled. To our knowledge, Russell was the only other possible person who could have asserted a loss of consortium claim. Moreover, the Lehmanns acknowledge in the Release that, before executing the Release, they were fully informed of its terms, contents, conditions and effects, and the Lehmanns' counsel acknowledged explaining the Release to them.

gence action. *Whittlesey v. Miller*, 572 S.W.2d at 667. Consequently, the court held that the husband's settlement of his claim did not preclude the wife's right to pursue her cause of action for loss of consortium. *Id.* at 668.

Therefore, Russell's claim for loss of parental consortium is derivative to the extent that liability for the parent's injury must be established, and as such is subject to the same defenses applicable to the injured parent's claim. *Reagan*, 804 S.W.2d at 467; *Nash v. Selinko*, 14 S.W.3d 315, 317 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). However, based upon the reasoning in *Reagan* and *Whittlesey*, we acknowledge that a loss of parental consortium claim is a separate and independent claim that is not automatically extinguished merely because the injured parent has settled his claim for his personal injuries.

Nevertheless, as a derivative cause of action, loss of parental consortium owes its existence to the parent's underlying personal injury claim. *Nash*, 14 S.W.3d at 317. If Douglas had not been injured, Russell would have no loss of consortium claim. The fact that Russell (through his next friend) has an independent right to pursue the claim does not mean that it cannot be a derivative claim. As a derivative claim, it can fairly be said to be a claim "through" the Lehmanns. *See Texas Nat'l Bank v. Fidelity & Deposit Co.*, 526 S.W.2d 770, 774 (Tex.Civ.App.—Waco 1975, no writ); *Piper, Stiles & Ladd v. Fidelity & Deposit Co.*, 435 S.W.2d 934, 939 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.) (defining "through" as "by means of, in consequence of, by reason of, by the intermediary of, and because of"). Therefore, the indemnity provision includes Russell's claims for loss of parental consortium.

Accordingly, we need not address the Lehmanns' claim, unsupported by any authority, that the "by" or "through" language of the indemnity provision means a claimant in privity with the Lehmanns.

We overrule the Lehmanns' third and fourth issues.

### c. *Does enforcement of the indemnity provision violate public policy?*

Lastly, in the Lehmanns' fifth and sixth issues, they contend that the trial court erred in granting Har–Con's motion for summary judgment and denying their motion for summary judgment because the indemnity violates public policy. Specifically, the Lehmanns argue that the tort claims of minors cannot be compromised or released without court approval, and Har–Con should not be permitted to circumvent this requirement by extracting an indemnity obligation from the minor's parents. Such an indemnity, they argue, operates as a de facto release of Russell's claims against Har–Con and is a direct violation of Texas Rule of Civil Procedure 44.[5] Further, the Lehmanns contend that the indemnity has the potential to skew the trial process because Har–Con would have an incentive to admit "sole negligence" in order to recover on the indemnity, which would be inconsistent with its previous denial of liability for Douglas Lehmann's injuries.

We reject the Lehmanns' conclusion that the indemnity operates as a de facto release that improperly compromises Russell's claims. The Lehmanns' argument implicitly recognizes that the Release does not actually settle Russell's claims. Under

---

5. Rule 44 provides that an individual acting as next friend on behalf of a minor may, with the approval of the court, compromise suits and agree to judgments that, when approved by the court, are binding upon the minor plaintiff. Tex.R. Civ. P. 44.

the Release, Douglas and Virginia released their claims and those of their "heirs, executors, legal representatives, administrators, successors and assigns" against Har–Con—not those of Russell. In comparison, as we have already discussed, the indemnity provision includes claims of loss of consortium that may be brought by Russell.

While releases and indemnity agreements both operate to transfer risk, they are not the same. As the *Dresser* court explained, a release surrenders legal rights or obligations between the parties to an agreement. *Dresser*, 853 S.W.2d at 508. It operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties, and is an absolute bar to any right of action on the released matter. *Id.* As such, a release is expressly designated as an affirmative defense. *Id.* In comparison, an indemnity agreement is a promise to safeguard or hold the indemnitee harmless against either existing or future loss liability. *Id.* The agreement creates a potential cause of action in the indemnitee against the indemnitor. *Id.* Therefore, because the Release does not purport to settle Russell's claims, but only indemnifies Har–Con against them, Rule 44 is not implicated and court approval of the Release is not required.

However, even if the Release effectively settled Russell's claims, the Lehmanns were authorized to execute the Release on behalf of Russell, a minor. A parent has the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child. Tex. Fam.Code Ann. § 151.001(a)(7) (Vernon Supp.2002).[6] Further, a parent prosecuting in the dual capacity of next friend of a minor and as a

plaintiff in her own right may settle a case, provided her interest is not preferred to the detriment of the minor. *Woodfin v. Coleman*, 931 S.W.2d 383, 385 (Tex.App.—Austin 1996, writ denied); *Wilson v. Fisher*, 105 S.W.2d 304, 310 (Tex.Civ.App.—Austin 1937, writ ref'd), *cert. denied*, 302 U.S. 746, 58 S.Ct. 264, 82 L.Ed. 577 (1937). Here, Virginia acted in the dual capacity of next friend of Russell and as a plaintiff in her own right, and she, along with Douglas, executed the Release. Neither party alleges a conflict of interest and there is nothing in the record to show that Virginia's rights were preferred to the detriment of Russell's. "There is a presumption that fit parents act in the best interests of their children." *Troxel v. Granville*, 530 U.S. at 68, 120 S.Ct. 2054. As the Supreme Court explained in *Parham v. J. R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979):

> The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.

*Id.* at 602, 99 S.Ct. 2493. The Lehmanns had every reason to consider Russell's loss of parental consortium claim because it benefitted not only Russell, but the entire family, to obtain the best settlement possible.

Finally, because we have rejected the Lehmanns' interpretation of the indemnity provision to limit the indemnity to the "sole negligence" of Har–Con, we reject their argument that the indemnity has the

---

6. Indeed, the parents' right to make decisions concerning the care, custody and control of their children is one of constitutional dimen-

sion. *See Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985).

potential to skew the trial process, mislead the jury, or increase litigation in this matter. There is no reason for Har–Con to assert, contrary to its previous position, that it was solely negligent in order to take advantage of the indemnity, because the indemnity provision sufficiently conveys that it provides indemnification for Har–Con's negligence, including, but not limited to, its sole negligence.

We overrule the Lehmanns' fifth and sixth issues. The judgment of the trial court is affirmed.