## In re SSP PARTNERS d/b/a Circle K and Jose Almaguer.

### No. 13–07–00291–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Oct. 11, 2007.

---

Gary D. Sarles, Sarles & Ouimet, Dallas, Rick Rogers, Porter, Rogers, Dahlman & Gordon, P.C., Corpus Christi, for relators.

Kevin W. Grillo, Hilliard & Munoz, Rick Holstein, Attorneys at Law, Corpus Christi, for real parties in interest.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## OPINION

Opinion by Chief Justice VALDEZ.

Relators, SSP Partners d/b/a Circle K and Josie Almaguer, petition this Court for a writ of mandamus directing the respondent, the Honorable James E. Klager, presiding judge of County Court at Law No. 4 of Nueces County, Texas, to order the minor plaintiffs to arbitration. The issue in this case is whether Angela Garcia's agreement to arbitrate her personal injury claims against her employer requires Garcia's minor children to arbitrate their claims for loss of parental consortium. We conclude that relators have failed to establish a valid agreement to arbitrate with the minor children, and, accordingly, we deny the petition for writ of mandamus.

### I. Background

Angela Garcia was an employee of relator SSP Partners. While working at one of SSP's convenience stores, Garcia was stabbed by a customer, Oscar Moreno. Garcia alleged that the manager of the convenience store, Josie Almaguer, knew

Moreno and knew that he had a history of violence.

When she was employed by SSP, Garcia agreed to participate in the SSP Partners Employee Injury Benefit Plan. SSP is a nonsubscriber under the Texas Workers' Compensation Act and did not carry workers' compensation insurance. Instead, it voluntarily established the Plan "to provide certain benefits for on-the-job injuries." According to the agreement, if Garcia is "injured on the job," she is "eligible under the Plan's terms for the medical, disability, death, burial and dismemberment benefits described in the Plan...." The agreement includes an arbitration agreement:

> *MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION:* I recognize that disputes may arise between the Company (or one of its affiliates) and me during or after my employment with the Company. I understand and agree that any and all such disputes that cannot first be resolved through the Company's internal dispute resolution procedures or mediation *must* be submitted to *binding* arbitration.
>
> I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement in exchange for eligibility for the Plan's medical, disability, dismemberment, death and burial benefits and in anticipation of gaining the benefits of a speedy, impartial, mutually-binding procedure for resolving disputes.
>
> This agreement to resolve claims by arbitration is *mutually* binding upon both me and the Company (and its affiliates, including SSP Partners, SSP Services, L.P., Applied Petroleum Technologies, Ltd., Susser Petroleum Company, L.P., Susser Management Company, Susser Petroleum Management Company,

> L.L.C., SSP Beverage, Inc., SSP Services Management Company, L.L.C., S Interests, Inc., S Interests Management Company, L.L.C., Susser Holdings, L.L.C., APT Interest, Inc., APT Management Company, L.L.C., SSP Holdings Limited Partnership, Rusche Properties I L.L.C., Rusche Management Company, SSP–MC, Inc. SSP Management Company, SSP Properties, I, L.L.C., SSP Properties II, L.L.C., SSP Properties, III, L.L.C., SSP properties, IV, L.L.C., Susser Company, Ltd., CASA Air, L.L.C., and 2000 Aviation, L.L.C.), and it binds and benefits our successors, subsidiaries, assigns, beneficiaries, heirs, children, spouses, parents and legal representatives.
>
> *CLAIMS SUBJECT TO ARBITRATION:* Claims and disputes covered by this Agreement *include:*
>
> (a) all claims and disputes that I may *now* have or may in the *future* have against the Company and/or against its successors, subsidiaries and affiliates and/or any of their officers, directors, shareholders, partners, owners, employees and agents, or against any Company employee benefit plan (including the Plan) or the plan's administrators or fiduciaries, and
>
> (b) all claims and disputes that the *Company* and/or its successors, subsidiaries and affiliates and/or any of their officers, directors, shareholders, partners, owners and any Company employee benefit plans (including the Plan) may *now* have or may in the *future* have against me, my spouse, children, heirs, parents and/or legal representatives.

Following the stabbing, Garcia received medical benefits under the Plan. However, a dispute arose regarding her benefits, and Garcia pursued arbitration on her individual claims against Circle K for breach of its

duty to provide a safe workplace. In that arbitration, SSP sought to also arbitrate the claims of Garcia's minor children. Accordingly, on March 29, 2006, Garcia initiated a lawsuit as next friend for Damien Garcia and Sarah Garcia, her minor children. Through this lawsuit, Garcia brought the loss of parental consortium claims of her minor children based on her bodily injury and sought a declaratory judgment that the arbitration agreement was not binding on her minor children. She later filed a separate suit based on her own claims. The two cases were consolidated. Relators removed the matter to federal court, where it was remanded based on waiver and lack of jurisdiction.[1] The trial court ultimately granted a motion to compel arbitration as to Garcia and denied the motion as to the minor children. This original proceeding ensued.

Relators contend that: (1) respondent erred in reaching the "gateway matter" of whether a valid arbitration agreement exists; and (2) respondent erred in failing to order to arbitration the derivative loss of parental consortium claims of the minor children. In contrast, real parties contend that: (1) forcing the minor children to arbitrate their claims under these circumstances would violate the public policy of Texas; (2) no valid arbitration agreement exists because it has been expressly disaffirmed by representatives of the children; and (3) no valid enforceable agreement exists because the agreement and actions taken by Circle K are unconstitutional and unconscionable.

## II. Arbitration

 A party seeking to compel arbitration by a writ of mandamus must establish the existence of a valid agreement to arbitrate under the FAA and show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig.proceeding). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Whether a valid arbitration agreement exists is a legal question subject to de novo review. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex.2006) (orig.proceeding). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003).

 Once a valid agreement to arbitrate has been established, the court must then determine whether the nonmovants' claims fall within the scope of the arbitration clause. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. But those public policies favoring arbitration do not extend to any favorable inclination one way or the other with regard to the question of who is bound by the arbitration agreement because the purpose of the FAA is "to make arbitration

---

1. *See Garcia v. SSP Partners*, No. C–06–385, 2006 WL 2850066, 2006 U.S. Dist. LEXIS 75810, at *23 (S.D.Tex. Oct.3, 2006).

agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *see In re Ghanem*, 203 S.W.3d 896, 899 (Tex.App.-Beaumont 2006, orig. proceeding).

■ If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id.* at 753–54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866–67 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

### III. Gateway Issue

■ In their first issue, relators contend that the respondent erred in reaching the "gateway matter" of whether a valid arbitration agreement exists because the election and arbitration agreement provide "unmistakable evidence" that such issues are to be arbitrated. Relators point to the following language in the agreement:

> [T]his agreement to resolve claims by arbitration is mutually binding upon both me and the Company (and its affiliates, including ...), and it binds and benefits our successors, subsidiaries, assigns, beneficiaries, heirs, children, spouses, parents, and legal representatives.

Relators point out that the election and arbitration agreement applies to claims against SSP's "employees and agents." The election and arbitration agreement also expressly provides that:

■ The types of claims covered by this Agreement include, but are not limited to, any and all ...

claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.

"Under the FAA, absent unmistakable evidence that the parties intended the contrary, it is the courts rather than arbitrators that must decide 'gateway matters' such as ... [w]hether an arbitration agreement is binding on a nonparty...." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex.2005) (orig.proceeding).

We do not believe the cited provisions constitute "unmistakable evidence" that the parties intended for an arbitrator to decide whether nonparties are bound by the arbitration agreement, particularly in light of established Texas law placing the initial burden of proving the existence of a valid arbitration agreement and claims within the scope of that agreement on the party seeking to compel arbitration. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003) (holding that "[a] party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement"); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999) (orig.proceeding) (holding that "[a] party seeking to compel arbitration must establish the existence of an arbitration agreement, and show that the claims raised fall within the scope of that agreement"), *abrogated on other grounds by In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex.2002) (orig.proceeding); *In re Ford Motor Co.*, 220 S.W.3d 21, 23–24 (Tex. App.-San Antonio 2006, orig. proceeding). In this case, the "claims subject to arbitration" clause applies to "all claims that I may *now* have or may in the *future* have." This does not expressly incorporate claims that Garcia's heirs or children may have, and the language purporting to bind her

heirs and children is limited by the narrower scope of the "claims subject to arbitration" clause. As in *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir.2002), the "children did not personally sign the arbitration agreements, and there is no provision in the agreement expressly stating that the ... parents, on behalf of their children, agreed to submit the children's claims to arbitration." *See id.* at 1074.

In the absence of "unmistakable evidence" that the parties to this arbitration agreement intended that the issue of whether Garcia's children are bound by the arbitration agreement would be decided by an arbitrator, we hold that the general rule requiring the trial court to decide "gateway" matters applies in the instant case. *See Ford Motor Co.*, 220 S.W.3d at 23–24.

### IV. Claims of Minor Children

In their second issue, relators contend that the trial court erred in failing to order to arbitration the loss of parental consortium claims of Garcia's minor children. Relators contend that the minor children are expressly bound by the arbitration agreement. Relators also contend that the minor children are both third-party and direct beneficiaries of the arbitration agreement.

### A. Express Terms of the Agreement

 Relators contend that Garcia bound her minor children to the arbitration agreement when she signed it because the agreement expressly provides:

> This agreement to resolve claims by arbitration is *mutually* binding upon both me and the Company (and its affiliates,

including SSP Partners ...), and it binds and benefits our ... children....

We cannot agree with relators' argument. Garcia agreed to arbitrate "disputes [that] may arise between the Company (or one of its affiliates) and me." Garcia agreed to arbitrate her claims; she did not agree to arbitrate the claims of her minor children. *Cf. In re Kepka*, 178 S.W.3d 279, 296 (Tex. App.-Hous. [1 Dist.] 2005, orig. proceeding) (declining to enforce arbitration against a non-signatory wife because "a surviving wife may be an heir, within the meaning of an arbitration agreement that she did not sign individually, to her late husband's claims; she cannot be an heir to her own claims").

There is no provision in the agreement stating that Garcia, on behalf of her children, was agreeing to submit the children's claims to arbitration. Garcia did not sign the agreement on behalf of the children or as representative of the children. Accordingly, the children are not bound by the express terms of the agreement. *See Fleetwood Enter., Inc.*, 280 F.3d at 1074; *see also Fortune v. Killebrew*, 86 Tex. 172, 175, 23 S.W. 976, 977 (1893) ("But [the children] did not sign; and, as we have seen, their father having an adverse interest, had no authority to sign [the arbitration agreement] for them as their guardian."); *Snow v. Walker*, 42 Tex. 154, 156, 1875 WL 7396, 1874 Tex. LEXIS 288, *4–*5 (1874) (holding that mother's agreement to arbitrate matters concerning an estate in which the mother and her minor children had a common interest did not estop the minors from asserting claim to the estate).

Relators argue that Garcia exercised her statutory, perhaps constitutional,[2] right to make a decision of substantial legal significance for her minor children. Under the

---

2. *See, e.g., Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976) ("The natural right which exists between parents and their children is one of constitutional dimensions.").

family code, a parent of a child has the right to represent the child in legal actions and to make other decisions of substantial legal significance concerning the child. *See* Tex. Fam.Code Ann. § 151.001(a)(7) (Vernon Supp.2006). Relators further contend that courts in other jurisdictions have enforced arbitration agreements entered into by parents on behalf of their minor children. Relators also contend that the *parens patriae* doctrine, that is, the doctrine that all orphans, dependent children, and incompetent persons, are within the special protection, and under the control, of the state, fails to justify the failure to enforce the agreement.

We do not disagree with the general proposition that, under certain circumstances, parents have the authority to enter arbitration agreements on behalf of their minor children. However, this is not such a case. "Texas law does not ordinarily bind children to the contracts their parents sign." *Fleetwood*, 280 F.3d at 1076; *see also Southwest Tex. Pathology Assocs., L.L.P., v. Roosth*, 27 S.W.3d 204, 208 (Tex. App.-San Antonio 2000, pet. dism'd w.o.j.); *In re Conseco Fin. Corp.*, 19 S.W.3d 562, 565 (Tex.App.-Waco, orig.proceeding); *Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria*, 783 S.W.2d 229, 231 (Tex. App.-Corpus Christi 1989, no writ). Under the contract at issue, Garcia did not expressly agree to submit her minor children's claims to arbitration. We will not require the minors to arbitrate simply because they are minors and their claims are related to that of their parent.

### B. Third–Party and Direct Beneficiaries

Relators also contend that the minor children are both third-party and direct beneficiaries[3] of the arbitration

agreement. Relators contend that under the arbitration agreement the children received (1) the benefit of arbitration; (2) a death benefit payable to the spouse and children, if any, of Garcia; and (3) wage replacement disability benefits. Nonsignatories may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally. *See In re Kellogg, Brown & Root*, 166 S.W.3d at 741; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 755.

A third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *see Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex.2002). There is a presumption against, not in favor of, third-party beneficiary agreements. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999).

In contrast, under direct benefits estoppel, to be compelled to arbitrate, a nonsignatory must either (1) bring claims in a lawsuit that seek direct benefits from a contract containing an arbitration clause, or (2) deliberately seek and obtain substantial benefits from the contract itself outside of litigation. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–33 (Tex. 2005). *Cf. Serv. Corp. Int'l v. Lopez*, 162 S.W.3d 801, 811 (Tex.App.-Corpus Christi 2005, no pet.) ("Texas courts have found non-signatories bound to arbitration agreements in two situations: first where the non-signatory sued on the contract; and second, where the non-signatory was a third-party beneficiary of the contract.").

---

**3.** The third-party and direct beneficiary doctrines have been treated as distinct. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 & n. 7 (Tex.2005). However, conceptually, it would appear that the doctrines are related, if not co-extensive.

 While the boundaries of direct-benefits estoppel are not always clear, non-parties generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex.2006); *Weekley*, 180 S.W.3d at 132, 134. The doctrine of direct-benefits estoppel does not apply when the benefits alleged are insubstantial or indirect; it does apply when one deliberately seeks substantial and direct benefits from the contract. *Weekley*, 180 S.W.3d at 134. The equitable nature of the doctrine may render firm standards inappropriate, requiring trial courts to exercise some discretion based on the facts of each case. *Weekley*, 180 S.W.3d at 134–135.

In the instant case, Garcia did not enter the contract directly for her children's benefit. See *Palm Harbor Homes, Inc.*, 195 S.W.3d at 678. Moreover, the children, through their representatives, have expressly disaffirmed the alleged arbitration agreement. *See id.* (third-party beneficiaries generally have the right to disclaim benefits proffered by a contract). The minor children are neither bringing claims in a lawsuit that seek direct benefits from the contract containing an arbitration clause, nor are they deliberately seeking and obtaining substantial benefits from the contract itself outside of litigation. *In re Weekley Homes, L.P.*, 180 S.W.3d at 131–33. *Cf. In re Ford Motor Co.*, 220 S.W.3d at 24 (binding children to arbitration clause signed by parents in breach of warranty case where children sued on contract).

 The children's claims are separate and distinct from those asserted by Garcia under the contract. *Cf. Kepka*, 178 S.W.3d at 295 (holding that non-signatory wife, asserting in her individual capacity claims for damages such as her own mental anguish and loss of consortium, earnings, companionship, society, and inheritance, lacked the type of privity contemplated for the contracting parties to bind her to a contract that she did not sign in her individual capacity). The children are bringing claims for loss of parental consortium. A child can recover for loss of consortium when the parent suffered serious, permanent, and disabling injury or death. *Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex.1990). A claim for loss of parental consortium is derivative to the extent that liability for the parent's injury must be established, and as such is subject to the same defenses applicable to the injured parent's claim. *Lehmann v. Har–Con Corp.*, 76 S.W.3d 555, 564 (Tex. App.–Houston [14th Dist.] 2002, no pet.). However, a loss of parental consortium claim is a separate and independent claim that is not automatically extinguished merely because, for instance, the injured parent has settled his claim for his personal injuries. *See id.*

We conclude that the rules of law or equity do not bind Garcia's minor children to her contract and that they are not subject to arbitration as third party or direct beneficiaries of the arbitration agreement.

## V. Conclusion

Relators have failed to establish a valid agreement to arbitrate with the minor children. Accordingly, the petition for writ of mandamus is denied. *See* Tex.R.App. P. 52.8(a).