NUMBER 13-17-00492-CV



# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**STORM WATER SOLUTIONS, LLC,**                                    Appellant,

**v.**

**LIVE OAK RAIL PARTNERS, LLC,**                                    Appellee.

**On appeal from the 343rd District Court
of Live Oak County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa
Memorandum Opinion by Justice Longoria**

Mark Bomar sued appellee Live Oak Rail Partners, LLC ("Live Oak"), alleging that discharge of excess storm water and silt from Live Oak's development caused damage to his land. Live Oak then brought third-party claims against three entities, including appellant Storm Water Solutions, LLC ("Storm Water"). Storm Water argues on appeal

that the trial court erred by denying its motion to compel arbitration. We reverse and remand.

## I. BACKGROUND

In 2013, Live Oak, in partnership with Howard Energy Partners ("Howard Energy"), constructed a railroad hub ("the Hub"). Bomar owns the land adjacent to the Hub. In his suit, he complains that sediment and water runoff from the construction site of the HUB has flowed onto his property on multiple occasions since 2014. Based on his complaints, the Texas Commission on Environmental Quality ("TCEQ") issued a water field citation on March 10, 2015 to Live Oak for outstanding violations related to the Hub's storm water pollution prevention plan. On June 30, 2015, Storm Water was retained to respond to the water field citation. An agreement was signed by Storm Water's representative Justin Cox and Howard Energy Partners' representative Larry Walker. The agreement states that Storm Water is to provide consultative and field services related to the discharge of storm water from the Hub. The agreement also contained the following clauses:

> Disputes: The parties will attempt to resolve any disputes arising out of or relating to this Proposal or the resulting Agreement and/or the Work by a) direct discussions between the parties, followed by b) mediation. If disputes remain unresolved after mediation, they will be resolved by arbitration, with the award of the arbitrator(s) binding pursuant to Texas Civil Practices and remedies Code Ch. 171. Mediation and/or arbitration will be conducted by the American Arbitration Association ("AAA") under their Construction and Industry Rules in effect at the time that the dispute is first submitted to the AAA.

> . . .

> No Third Party Beneficiary: Notwithstanding any provision of the Agreement, no other person or entity besides [Storm Water] and [Howard Energy], whether or not mentioned in this Agreement or in the Work, is intended to be or will be considered to be a third party beneficiary of or entitled to assert any rights under this Agreement.

2

Storm Water provided consulting services from the date of the agreement until November 24, 2015. The record indicates that most of Storm Water's work during this time was directed, supervised, and/or requested by Live Oak. Representatives from Storm Water met with representatives from Live Oak during site inspections and made compliance recommendations to Live Oak and its contractor, Q-Haul, Inc. Storm Water also stayed in frequent touch with Seay and Simpson about the status of the project. On several occasions, Live Oak representatives made service demands of Storm Water pursuant to the agreement, such as asking Storm Water to perform additional site inspections and seeking additional recommendations after heavy rains caused sediment issues at the Hub. Storm Water also submitted paperwork to the TCEQ on behalf of Live Oak documenting compliance with the prescribed actions. On September 16, 2015, the TCEQ issued a letter indicating that it had received adequate compliance documentation to resolve alleged violations at the Hub.

Bomar asserted claims against Live Oak for trespass, negligence, nuisance, and violations of the Texas Water Code, alleging that Live Oak "failed to construct a structurally sound detention pond and install suitable silt fencing, as well as, the creation of other suitable barriers to prevent the flow of storm waters onto [Bomar's] land." Live Oak in turn filed a claim against Storm Water for contribution. When Live Oak brought its third-party claims against Storm Water, Storm Water moved to compel arbitration under the agreement. Although the agreement was executed by Howard Energy, which is Live Oak's parent company, Storm Water contended that Live Oak is bound by the terms of

the arbitration agreement under the doctrine of direct-benefits equitable estoppel. [1]  The

trial court denied Storm Water's motion to compel arbitration.  This appeal followed.

## II. MOTION TO COMPEL ARBITRATION

Storm Water argues on appeal that the trial court abused its discretion by denying

its motion to compel arbitration.  More specifically, Storm Water argues that Live Oak was

bound to arbitrate because:  (1) Live Oak is equitably estopped from refusing to arbitrate

because it has sought and received the direct benefits of the agreement; and (2) its claims

fall within the scope of a valid arbitration agreement.

### A. Standard of Review

We review the denial of a motion to compel arbitration for an abuse of discretion.

*Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 418 (Tex. App.—Dallas 2011, pet.

denied).  A trial court abuses its discretion when it acts without reference to any guiding

rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).  Under this

standard, we defer "to the trial court's factual determinations if they are supported by

evidence, but we review the trial court's legal determinations de novo."  *Weekley*, 336

S.W.3d at 418 (citing *In re Labatt Food Svc., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig.

proceeding)).  Specifically, "[w]hether an arbitration agreement is enforceable is subject

to de novo review."  *Id.*  But "[a] trial court that refuses to compel arbitration under a valid

and enforceable arbitration agreement has clearly abused its discretion."  *In re 24R, Inc.*,

324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding) (citing *In re Halliburton Co.,* 80

S.W.3d 566, 573 (Tex. 2002)).

---

[1] Howard Energy is listed as the "Governing Organization" in Live Oak's application for registration as a foreign limited liability company.  In addition, Howard Energy's CEO, President, and CFO are all on Live Oak's Board of Directors.

**B. Applicable Law**

Generally, federal and state policies strongly favor arbitration. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985); *Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.001 *et seq.* (West, Westlaw through 2017 1st C.S.). For a court to compel arbitration under the Texas Arbitration Act ("TAA"), the moving party must establish: (1) a valid agreement to arbitrate, and (2) that the claims fall within the scope of that agreement. *Rachal v. Reitz,* 403 S.W.3d 840, 843 (Tex. 2013).[2] Ordinary principles of state law determine whether there is a valid agreement to arbitrate. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding). A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that (1) exists at the time of the agreement, or (2) arises between the parties after the date of the agreement. TEX. CIV. PRAC. & REM. CODE ANN. § 171.001.

Normally, only parties to an arbitration agreement can be compelled to arbitrate. *Id.* at 739. However, the Texas Supreme Court has recognized "six theories, arising out of common principles of contract and agency law, that may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 362 (5th Cir. 2003) (applying Texas law); *see In re Kellogg, Brown & Root, Inc.,* 166 S.W.3d at 738.

---

[2] It is undisputed that the TAA governs the arbitration clause in this case, as opposed to the Federal Arbitration Act.

Under the doctrine of direct-benefits equitable estoppel, a non-signatory has assented to be bound by the arbitration agreement if the non-signatory seeks or obtains direct benefits from the contract containing the arbitration clause. *See In re SSP Partners*, 241 S.W.3d 162, 170 (Tex. App.—Corpus Christi 2007, orig. proceeding). Texas courts have recognized two ways in which a non-signatory can seek a direct benefit from the contract containing the arbitration clause: "(1) bring claims in a lawsuit that seek direct benefits from a contract containing an arbitration clause, or (2) deliberately seek and obtain substantial benefits from the contract itself *outside of litigation*." *Id.* (emphasis added); *see Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302 (Tex. 2006) (applying the equitable estoppel standard to an arbitration agreement governed by the TAA); *In re Weekley Homes*, 180 S.W.3d at 132. Even though the equitable estoppel and third-party beneficiary theories are similar, there is a subtle difference: "Under third-party beneficiary theory, a court must look to the intentions of the parties *at the time* the contract was executed. Under the equitable estoppel theory, a court looks to the parties' conduct *after* the contract was executed." *Bridas*, 345 F.3d at 362 (emphasis added). Thus, it is the general rule that if a non-signatory's claims can stand independently of the underlying contract, then arbitration should not be compelled. *See Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739. But there are situations in which "a tort claim by a non-signatory to an arbitration agreement arising from general duties and obligations under the law (rather than a contract) is nonetheless subject to arbitration through the theory of direct-benefits estoppel." *Rocha v. Marks Transp., Inc.*, 512 S.W.3d 529, 538 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *In re Weekley Homes*, 180 S.W.3d at 133).

6

Although courts sometimes hesitate to compel arbitration against a non-signatory to an arbitration agreement, courts are less hesitant to do so when the non-signatory is the one to initiate the suit. *See Bridas*, 345 F.3d at 363; *see also In re Weekley Homes*, 180 S.W.3d at 134 (observing that the "strong state policy favoring arbitration would be effectively thwarted" if non-signatories could avoid arbitration by initiating the suit themselves); *In re Kellogg, Brown & Root, Inc.*, 166 S.W.3d at 739.

## C. Discussion

Storm Water argues that Live Oak has sought and received substantial benefits from the contract and therefore is equitably estopped from avoiding the arbitration clause. Live Oak asserts that it is not bound by the agreement because it did not sign the agreement. Additionally, Live Oak also argues that it is not bound to arbitrate because its claims merely "relate to" the agreement; they do not seek to "enforce" the agreement. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527–28 (Tex. 2015). We will first determine whether there is an enforceable, valid agreement to arbitrate that is binding to Live Oak as a non-signatory; if we find there is a valid agreement, the next step is to determine if the claims fall within the scope of said agreement. *See Rachal*, 403 S.W.3d at 843.

### 1. Valid Agreement to Arbitrate

As Live Oak points out, a defendant's contribution claim is derivative of the plaintiff's right to recover against the joint defendant against whom contribution is sought. *See Shoemake v. Fogel, Ltd.*, 926 S.W.2d 933, 935 (Tex. 1992); *Prairie View A & M Univ. v. Brooks*, 180 S.W.3d 694, 702 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In other words, Live Oak argues that its contribution claim concerns the duty that Storm Water

owes Bomar for his underlying claims of negligence and trespass, not the agreement with Storm Water. Thus, Live Oak asserts its contribution claim against Storm Water is "independent" of the agreement. *See In re Kellogg, Brown & Root, Inc.*, 166 S.W.3d at 738. Live Oak goes so far as to argue that equitable estoppel does not apply in contribution cases; however, this Court has previously held that arbitration can be compelled even in cases concerning contribution claims. *See Hudson Ins. Co. v. Bruce Gamble Farms*, No. 13-15-00098-CV, 2015 WL 6758654, at *6 (Tex. App.—Corpus Christi Nov. 5, 2015, no pet.) (mem. op.).

More importantly, Live Oak's arguments largely focus on whether or not it is seeking benefits from the contract directly through the lawsuit; this approach fails to address Storm Water's major contention that Live Oak received substantial benefits from the contract "*outside of litigation.*" *In re SSP Partners*, 241 S.W.3d at 170 (emphasis added). We find that Live Oak's arguments and underlying fact pattern are analogous to those presented in *In re Weekley Homes*, 180 S.W.3d at 134. The *Weekley Homes* case involved a purchase agreement for the construction of a home. The purchase agreement was executed between Weekley Homes, the homebuilder, and Vernon Forsting, who was the father of the plaintiff, Von Bargen. The lawsuit brought by Bargen against Weekley Homes alleged personal injury damages related to construction defects within the home. Weekley Homes moved to compel arbitration against the plaintiff under the real estate purchase agreement. Bargen argued that she was not bound by the purchase agreement because she did not sign the agreement, her father did. Bargen also asserted that she was not suing under the contract; rather, she insisted that her claim arose out of the independent duties imposed on Weekley under Texas tort law. Nonetheless, the

8

Supreme Court of Texas ruled that Bargen was equitably estopped from avoiding the purchase agreement's arbitration requirement. *See id*. at 133.

In making that determination, the court noted that Bargen was the actual occupant of the home and sought direct benefits from the purchase agreement. For example, she negotiated directly with Weekley on construction issues, selected the floor plan, signed a letter of intent as a purchaser, made custom design choices for the home, and directly demanded repairs from Weekley Homes when she first noticed the construction issues. *See id*. She was the one to pay the deposit on the home. The court even acknowledged that nothing in the record suggests "Bargen's claim is different from what any bystander might assert." *See id*. at 132. However, the court ultimately concluded:

> when a nonparty consistently and knowingly insists that others treat it as a party, it cannot later turn[ ] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful. A nonparty cannot both have his contract and defeat it too. . . . While Von Bargen never based her personal injury claim on the contract, her prior exercise of other contractual rights and her equitable entitlement to other contractual benefits prevents her from avoiding the arbitration clause here.

*See id*. at 135 (internal citations and quotations omitted). Therefore, Bargen was bound by the arbitration because she sought for and received substantial benefits under the agreement, even though the agreement was signed by her parent. *See id*.

Likewise, in the present case, we conclude that Live Oak is bound by the agreement even though it was signed by Live Oak's parent (company). Howard Energy may have signed the agreement, but Live Oak received substantial benefits under the agreement. Live Oak requested services and inspections and recommendations from Storm Water. Live Oak paid Storm Water for its services under the agreement. Live Oak supervised and directed Storm Water's performance of the agreement at the work site.

9

Thus, like Bargen, even though Live Oak's contribution claim may rest in tort law and even if Live Oak never based its claim directly upon the agreement, we find that Live Oak's prior exercise of other contractual rights outside of litigation prevents it from avoiding arbitration. *See id*.; *In re SSP Partners*, 241 S.W.3d at 170; *see also Rocha*, 512 S.W.3d at 538.

We also find Live Oak's argument that compelling arbitration would run contrary to the parties' intention to be unpersuasive. It is true that the agreement clearly contains a "No Third Party Beneficiary" clause. However, we disagree with Live Oak's contention that this clause prevents Storm Water from compelling arbitration based on equitable estoppel. As noted previously, third-party beneficiary theories and equitable estoppel theories, although similar, are distinct and independent grounds which may bind a non-signatory to an arbitration agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *Sabine Syngas, Ltd. v. Port of Port Arthur Nav. Dist. of Jefferson Cty., Tex.*, No. 09-09-00331-CV, 2011 WL 192756, at *4 (Tex. App.—Beaumont Jan. 13, 2011, no pet.) (mem. op.) (holding that a third-party beneficiary clause, which explicitly stated the parties' intention for there to be no third-party beneficiaries, "does not negate appellee['s] right to compel arbitration based on equitable estoppel"). The clause about third party beneficiaries informs us of Storm Water's and Howard Energy's intention at the time the contract was executed; however, "[u]nder the equitable estoppel theory, a court looks to the parties' conduct after the contract was executed." *Bridas*, 345 F.3d at 362.

**2. Scope of the Agreement**

Finding that there was a valid arbitration agreement applicable to Live Oak as a non-signatory, we must determine whether the present claims fall within the scope of the arbitration agreement. *See Rachal*, 403 S.W.3d at 843; *In re Kellogg, Brown & Root, Inc.*, 166 S.W.3d at 738. We first note that Live Oak does not really dispute that its claims fall within the scope of the agreement; rather, Live Oak focuses its brief on contending that there is no valid arbitration agreement in the first place. *See Rachal*, 403 S.W.3d at 843.

But we also note that the arbitration agreement in this case is extremely broad in scope. The contract uses broad language providing that "any dispute out of or related to this Proposal, or the resulting Agreement, and/or the Work" will be arbitrated. This language suggests that the parties intended all claims between the parties, both contractual and extra-contractual, to be subject to arbitration. *See Prima Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397–98, (1967) (observing that an arbitration clause requiring "[an]y controversy or claim arising out of or relating to this Agreement" to be arbitrated was "broad" and had an expansive reach); *see also Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164–65 (5th Cir. 1998) (holding that when parties agree to arbitrate any "dispute . . . arising out of or in connection with or relating to this Agreement," the parties intended the clause to "reach all aspects of the relationship"). Other courts have compelled arbitration of tort claims if the arbitration clause's scope was broad enough to include tort claims. *See Meyer,* 211 S.W.3d at 307. The language in the agreement suggests that Storm Water and Howard Energy contemplated that all types of claims would be arbitrated because the contracts did not place any limitations on what kinds of disputes would be arbitrated. *See id*. Therefore, Live Oak's claims fall within the scope of the arbitration agreement.

11

### 3. Summary

We conclude that Live Oak is bound under the arbitration agreement, even as a non-signatory, under the direct-benefits equitable estoppel theory and that Live Oak's claims fall within the broad scope of the valid, enforceable arbitration agreement. The trial court erred by failing to compel arbitration. We sustain Storm Water's sole issue.[3]

## III. CONCLUSION

We reverse the trial court's order refusing to compel arbitration and remand for entry of an order compelling the parties to arbitrate.

NORA L. LONGORIA
Justice

Delivered and filed the
14th day of February, 2019.

---

[3] Storm Water has admitted that its other issue concerning discovery deadlines has become moot in light of the trial court's stay of the proceedings below.