Opinion issued December 13, 2016



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-01073-CV

————————————

**PATRICIA ROCHA, Appellant**

**V.**

**MARKS TRANSPORT, INC. D/B/A AUTONATION TOYOTA GULF FREEWAY, Appellee**

———

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-34045**

———

**O P I N I O N**

Plaintiff-appellant Patricia Rocha sued defendant-appellee Marks Transport, Inc. d/b/a AutoNation Toyota Gulf Freeway ("the dealership") over injuries she allegedly sustained when she slipped and fell in the waiting area of the dealership. This is an appeal from the trial court's final judgment granting the dealership's

motion to compel binding arbitration of Rocha's premises liability claim and dismissing Rocha's suit.

Plaintiff argues that there was no basis for the trial court compel arbitration because it was her husband, rather than her, that signed a contract with defendant agreeing to arbitrate certain disputes. She acknowledges that an arbitration clause can be enforced against a non-signatory through the theory of direct-benefit estoppel, but contends that this theory does not apply here, and that, even if it did, her claims fall outside the scope of the arbitration agreement.

The dealership concedes that it was error for the trial court to dismiss Rocha's claims, but argues that we are otherwise without jurisdiction to reach the merits of Rocha's appeal. Alternatively, it argues that the trial court's order compelling arbitration was correct.

We vacate the portion of the trial court's judgment dismissing Rocha's claims, reverse the trial court's order compelling arbitration of Rocha's claims, and remand to the trial court for further proceedings.

## JURISDICTION

The dealership concedes that the portion of the trial court's order dismissing Rocha's claims is incorrect. But, in both its appellee's brief and in a separate motion to dismiss filed here, it argues that "[w]hile this Court has jurisdiction to review dismissal of the case in favor of [dealership], the Court does not have

2

jurisdiction to review the order compelling arbitration under this Court's well-established precedent." The dealership cites a string of cases in support, but relies primarily on this Court's decision in *Brooks v. Pep Boys Automotive Supercenters*, 104 S.W.3d 656 (Tex. App.—Houston [1st Dist.] 2003, no pet).

The arbitration clause in the contract between Rocha's husband and the dealership is governed by the Federal Arbitration Act (FAA). *Brooks* also involved an arbitration clause governed by the FAA and presented a situation indistinguishable from the one in the case. 104 S.W.3d at 658–59. In *Brooks*, as here, the trial court (1) compelled arbitration of the plaintiff's claims against the defendant, and (2) dismissed the plaintiffs' case. *Brooks*, 104 S.W.3d at 658.

On appeal, we noted that, "to the extent that the trial court dismissed [the plaintiff's] entire case, the trial court's order is reviewable as an appeal from a final judgment." *Id*. at 659. We then concluded such dismissal was erroneous, because "[i]f a trial court concludes that the parties have established an agreement to arbitrate under the FAA and that the claims to be arbitrated are within the scope of the agreement, a Texas trial court 'has no discretion but to compel arbitration and *stay its proceedings pending arbitration*.'" *Id*. at 659–60 (quoting *Cantella v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (emphasis added)). Accordingly, we vacated the portion of the trial court's judgment that dismissed the plaintiff's case.

Pointing out the interlocutory nature of the order compelling arbitration, we refused, however, to address the plaintiff's arguments that the trial court's compelling arbitration was erroneous. *Id.* at 660–61. ("An order compelling arbitration under the FAA is neither a final disposition, nor expressly authorized by any of the provisions of the Civil Practice and Remedies Code that permit interlocutory appeals."); *see also J.C. Viramontes, Inc. v. Novoa*, No. 08-08-00342-CV, 2009 WL 224963, at \*1 (Tex. App.—El Paso Jan. 30, 2009, no pet.) (mem. op.) ("An order compelling arbitration is not a final order, nor is it an order from which an interlocutory appeal can be taken."). Instead, we vacated the portion of the trial court's order dismissing the plaintiff's claims and dismissed his appeal "to the extent he challenges the portion of the trial court's order that compelled arbitration." *Brooks*, 104 S.W.3d at 661. The dealership argues that, under *Brooks* we should vacate the portion of the court's judgment dismissing Rocha's claims and remand without considering whether the trial court's compelling arbitration was erroneous.

While *Brooks* io on point and has not been expressly overruled, it is at odds with a more recent Texas Supreme Court opinion not cited by either party or by cases following *Brooks*. In *Childers v. Advanced Foundation Repair, L.P.*, the supreme court reversed a court of appeals's judgment dismissing an appeal for lack of jurisdiction. 193 S.W.3d 897, 897–98 (Tex. 2006) (per curiam). As in this case

4

and in *Brooks*, the trial court in that case had (1) compelled arbitration of the plaintiff's claims under the FAA, and (2) dismissed the plaintiff's claims. *Id.* at 897. The court of appeals held it was without jurisdiction over an appeal from the trial court's judgment, characterizing the trial court's judgment as an interlocutory order reviewable only by mandamus. *Childers v. Advanced Foundation Repairs*, 221 S.W.3d 90, 93 (Tex. App.—Corpus Christi 2005, *rev'd by* 193 S.W.3d 897 (Tex. 2006). The supreme court reversed the court of appeals' judgment, holding that the trial court's order compelling arbitration and dismissing the plaintiff's claims was final, and "remand[ing] to the court of appeals to consider the merits" of the plaintiff's appeal. *Childers*, 193 S.W.3d at 898. On remand, the court of appeals addressed the merits of the plaintiff's argument that the trial court erred in compelling arbitration and affirmed the trial court's order. *Childers v. Advanced Foundation Repairs, L.P.*, No. 13-04-00193-CV, 2007 WL 2019755, at *3 (Tex. App.—Corpus Christi July 12, 2007, no pet.) (mem. op.).

Childers and the cases following it are controlling here. Thus, while we agree with both parties that it was error for the trial court to dismiss Rocha's claims, we deny the dealership's motion to dismiss Rocha's challenge to the trial court's order compelling arbitration. *See, e.g., In re Gulf Expl., LLC*, 289 S.W.3d 836, 838 (Tex. 2009) (orig. proceeding) ("We too have adopted this rule: "Courts may review an order compelling arbitration if the order also dismisses the

5

underlying litigation so it is final rather than interlocutory."); *Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 642 (Tex. App.—Dallas 2010, no pet.) ("Courts may review an order compelling arbitration if the order also dismisses the entire case and is therefore a final, rather than interlocutory, order.").

## ARBITRATION

Rocha's June 12, 2015 Original Petition recites the following as the facts giving rise to her premises liability claim against the dealership:

> Plaintiff was a customer getting her car serviced at AutoNation Toyota Gulf Freeway, located at 12111 Gulf Freeway, Building B, Houston, Harris County, Texas. Plaintiff was in the waiting area, on her way to the ladies bathroom when she slipped and fell due to a liquid substance on the floor. Said premises at all times material hereto was owned, operated and/or maintained by Defendants. As a result of this incident, Plaintiff suffered personal injuries.

In the dealership's answer, it states: "Upon information and belief, an Arbitration Agreement exists between Plaintiff and Defendant and the claims asserted by Plaintiff are within the scope of that agreement." The dealership also filed a motion to compel arbitration and for stay or dismissal of litigation. In that motion, the dealership contended that Rocha's claims were subject to arbitration through an arbitration clause contained within the sales and finance contract entered into between Rocha's husband, Jose, and the dealership when Jose purchased a vehicle from the dealership. That clause provides:

6

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not a court action.

. . . .

Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. al.) and not by any state law concerning arbitration

. . . .

The dealership's motion was accompanied by the dealership's General Manager's affidavit. It authenticated the attached copy of the sales contract between Jose and the dealership as a business record, stated that he was "personally acquainted with the facts herein stated and they are true and correct" and that:

7

4. AutoNation Toyota is a retailer of new and used vehicles in Houston, Texas. On or about June 1 of 2012, AutoNation Toyota sold the Vehicle to Plaintiffs husband, which transaction is set forth in the Contract. In connection with the Contract, the parties executed an Arbitration Agreement. The Arbitration Agreement specifically stales that the transaction is subject to the Federal Arbitration Act ("FAA"). Plaintiff is not a signatory to the Arbitration Agreement.

5. Pursuant to the Arbitration Agreement, Jose Rocha, Jr. agreed "Either you or we may choose to have any dispute between us decided by arbitration and not in court or by-jury trial." Pursuant to the Arbitration Agreement, claims subject to arbitration include "Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not a court action.

6. On or about June 12, 2015, Plaintiff filed a lawsuit against AutoNation Toyota containing claims that arose from transactions or relationships that resulted from Jose Rocha, Jr.'s purchase of the Vehicle and the Contract. These claims specifically fall within the defined claims under the Arbitration Agreement.

Rocha responded to the dealership's motion to compel arbitration by arguing that (1) her claims do not fall within the scope of the arbitration agreement, and (2) direct-benefit estoppel does not apply to claims not covered by an arbitration agreement.

The dealership responded by producing additional evidence: (1) a recording of Rocha referring to her husband's vehicle as "my car," and (2) a receipt

8

identifying Jose as the customer having work performed on his vehicle on the day of Rocha's slip-and-fall injury and indicating it was warranty-covered work on a broken seat belt. The trial court granted the dealership's motion to compel, and dismissed Rocha's claims.

**A. Standard of Review and Applicable Law**

"Generally, we review a trial court's decision to grant or deny a motion to compel arbitration under an abuse of discretion standard." *Enter. Field Servs., LLC v. TOC–Rocky Mountain, Inc.*, 405 S.W.3d 767, 773 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Under this standard, we defer to a trial court's factual determinations if they are supported by evidence, but we review a trial court's legal determinations de novo. *In re Labatt Food Serv., L.P*., 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). Whether a valid arbitration agreement exists and whether the arbitration agreement is ambiguous are questions of law that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding).

A party seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). If the movant establishes that an arbitration agreement governs the dispute, the burden shifts to the party opposing arbitration

to establish a defense to the arbitration agreement. *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding)). Once the movant establishes a valid arbitration agreement encompassing the claims at issue, a trial court has no discretion to deny the motion to compel arbitration unless the opposing party proves a defense to arbitration. *Id.* (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. Proceeding)).

Because state and federal policies favor arbitration, courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank*, 52 S.W.3d at 753. To be subject to arbitration, the "allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *In re B.P. America Prod. Co.*, 97 S.W.3d 366, 371 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

"Generally, only signatories to an arbitration agreement are bound by the agreement." *Elgohary v. Herrera*, 405 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "While non-signatories to an arbitration agreement can be bound to arbitrate under principles of contract and agency law, such issues— dealing as they do with non-signatories—are gateway 'issues of arbitrability' that

the courts are primarily responsible for deciding—not the arbitrator." *Id*. at 791 (citing *Roe v. Ladymon*, 318 S.W.3d 502, 515 (Tex. App.—Dallas 2010, no pet.); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 592 (2002)).

The doctrine of direct-benefits estoppel requires a non-signatory to arbitrate a claim "if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (orig. proceeding) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex.2005)). "While the boundaries of direct-benefits estoppel are not always clear, non-signatories generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law." *Weekley*, 180 S.W.3d at 130, 134. The doctrine also applies if a party "deliberately seeks and obtains substantial benefits from the contract" containing the arbitration clause. *Id*. at 132.

**B. Analysis**

In arguing that the trial court's granting of its motion to compel arbitration was correct, the dealership relies exclusively on the supreme court's decision in *Weekley*. In that case, addressing an issue of first impression, the supreme court held that—on the facts presented—a non-signatory to a contract containing an

11

arbitration clause could be compelled through the theory of direct-benefits estoppel to arbitrate a personal-injury claim. *Weekley*, 180 S.W.3d at 129.

In *Weekley*, Forsting (a 78-year-old widower with "an assortment of health problems") contracted with Weekley to construct a 4,000 square-foot house for the purpose of living in the house with his only child, Von Bargen, and her husband and three children. *Id.* It was Von Bargen and her husband, rather than Forsting, that paid the deposit, signed the letter of intent as "purchasers," selected the floor plan, negotiated issues with Weekly before and after construction, and made the custom design choices. *Id.* Only Forsting, however, executed the various financing and closing documents, including a Real Estate Purchase Agreement containing an arbitration clause:

> Any claim, dispute or cause of action between Purchaser and Seller. . . , whether sounding in contract, tort, or otherwise, shall be resolved by binding arbitration. . . . . Such claims, disputes or causes of action include, but are not limited to, those arising out of or relating to. . . the design, construction, preparation, maintenance or repair of the Property.

*Id.*

Although Forsting signed the purchase agreement in his individual capacity, his intent was to purchase the property as agent for a family trust for which he and Von Bargen and were the only trustees, and Von Bargen was the only beneficiary. *Id.* The purpose of the trust was to effectuate the transfer of the property to Von

Bargen upon Forsting's death. *Id*. Forsting transferred the property into the family trust shortly after the purchase. *Id*.

According to a petition filed against Weekly by Forsting, Von Bargen, and the family trust, numerous problems arose with the house after completion. *Id*. When the family moved out of the home so Weekley could perform some repairs, Von Bargen is the one who requested and received reimbursement. *Id*. She acknowledged handling "almost . . . all matters related to the house, the problems and the warranty work and even the negotiations." *Id*. In their petition, Forsting and the family trust asserted claims for negligence, breach of contract, statutory violations, and breach of warranty. *Id*. Von Bargen sued only for personal injuries, alleging Weekley's negligent repairs caused her to develop asthma. *Id*.

The trial court granted Weekley's motion to compel arbitration under the FAA as to claims by Forsting and the family trust, but denied it as to Von Bargen's personal-injury claim because she was not a signatory to the purchase contract containing the arbitration agreement. *Id*. The supreme court granted Weekley's request for mandamus relief, holding that the trial court erred in failing to compel arbitration of Von Bargen's claim. *Id*. at 129–30.

The supreme court noted that Von Bargen advocated for a rule that would bind non-signatories to a contract with an arbitration clause only if the non-signatory brought contract claims; in contrast, Weekly argued for a broad

application to any claim that "arises from or relates to" the contract containing the arbitration clause. *Id.* at 131. The supreme court noted it had adopted an "approach between these two extremes, holding that a nonparty may be compelled to arbitrate 'if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions.'" *Id.* (quoting *Kellogg*, 166 S.W.3d at 741).

Applying this standard, the court held that holding Von Bargen to the contract's arbitration obligation was warranted on these facts:

> Here, Von Bargen has not merely resided in the home. Claiming the authority of the Purchase Agreement, she directed how Weekley should construct many of its features, repeatedly demanded extensive repairs to "our home," personally requested and received financial reimbursement for expenses "I incurred" while those repairs were made, and conducted settlement negotiations with Weekley (apparently never consummated) about moving the family to a new home. Having obtained these substantial actions from Weekley by demanding compliance with provisions of the contract, Von Bargen cannot equitably object to the arbitration clause attached to them.
>
> In addition to these benefits, Forsting and the Trust have sued Weekley on claims which are explicitly based on the contract. Under Texas law, a suit involving a trust generally must be brought by or against the trustee, and can be binding on the beneficiaries whether they join it or not. Although Von Bargen did not purport to sue as either trustee or beneficiary, she was both, and any recovery will inure to her direct benefit as the sole beneficiary and equitable titleholder of the home. As one Texas court has noted, if a trustee's agreement to arbitrate can be avoided by simply having the beneficiaries bring suit, "the strong state policy favoring arbitration would be effectively thwarted."
>
> . . . .

14

> Direct-benefits estoppel requires a colorable claim to the benefits; a meddlesome stranger cannot compel arbitration by merely pleading a claim that quotes someone else's contract. . . . . [W]e agree with the federal courts that when a nonparty consistently and knowingly insists that others treat it as a party, it cannot later "turn[ ] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." A nonparty cannot both have his contract and defeat it too.

> While Von Bargen never based her personal injury claim on the contract, her prior exercise of other contractual rights and her equitable entitlement to other contractual benefits prevents her from avoiding the arbitration clause here . . . .

*Id*. at 133 (citations omitted).

The dealership argues that "the facts of this case are analogous to those in *Weekly Homes*" because Rocha is Jose's wife and brought Jose's car to the dealership for warranty work, "taking advantage of the contractual relationship between her husband and AutoNation Toyota." It also urges us to take her referring to Jose's vehicle as "my car" is a judicial admission. The dealership contends that under direct-benefits estoppel, Rocha "cannot demand AutoNation Toyota's compliance with contractual obligations to repair the Vehicle under warranty and then seek to avoid the Arbitration Clause simply because she did not sign it."

The dealership also argues that the arbitration clause is broad enough to cover Rocha's claims. It relies on the following clause: "*Any claim or dispute*, whether in contract, *tort*, statute or otherwise . . . which arises out of or relates to . . . this contract or any resulting transaction or relationship (including any subsequent

15

relationship with third-parties who do not sign this contract) *shall . . . .* be resolved by neutral, binding arbitration." (emphasis added). Because her tort claim is based on injuries sustained on the dealership's premises while Jose's vehicle was being serviced, the dealership insists that her claim falls within the scope of the clause.

Rocha responds that "in stark contrast to the plaintiff in *Weekley*, here, Rocha's claims are not in any way derived from her husband's contract with the dealership, but instead through a common tort law claim." She relies upon the supreme court's admonishment that "although a non-signatory's claim may relate to a contract containing an arbitration provision, that relationship does not, in itself, bind the non-signatory to the arbitration provision." (citing *Kellogg*, 166 S.W.3d at 741). Rocha contends that she "sustained personal injuries as a direct and proximate result of a dangerous condition of the premises," rather than any defect or dangerous condition related to the vehicle or its repairs. And, finally, she points out that "the often invoked 'policy in favor of arbitration agreements' does not apply when a court is a examining the threshold question of whether an arbitration agreement exists." (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302, 130 S. Ct. 2847, 2859 (2010); *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008); *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 185 (Tex. 2009).

We agree with Rocha that her personal-injury claim and its relationship to her husband's contract with the dealership is distinguishable from the plaintiff's personal-injury claim and its relationship with the home construction contract presented in *Weekley.* As the supreme court in *Weekley* explained,

> Under both Texas and federal law, whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading. Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it. On the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law.

*Weekley*, 180 S.W.3d at 132. Under this formulation, Rocha is not bound through direct-benefits estoppel because her complaint that hazardous conditions existed on the dealership's premises does not involve a duty or liability arising from her husband's purchase contract, liability will not be determined by reference to that contract, and the claim arises from general obligations to keep premises safe.

This is not to say that there are not circumstances under which a tort claim by a non-signatory to an arbitration agreement arising from general duties and obligations under the law (rather than a contract) is nonetheless subject to arbitration through the theory of direct-benefits estoppel. Indeed, the supreme court in *Weekley* held the non-signatory plaintiff bound by her father's obligation to arbitrate claims even though the plaintiff brought a personal-injury tort claim and did not sue under the contract containing the arbitration clause. 180 S.W.3d at

17

133. The court began by noting that "[w]hile Weekley's duty to perform those repairs [upon which the plaintiff's personal injury claim was based] arose from [her father's] Purchase Agreement, a contractor performing repairs has an independent duty under Texas tort law not to injure bystanders by its activities, or by premises conditions it leaves behind." *Id.* at 132. It explained, however, that— for purposes of direct-benefit estoppel—"a nonparty may seek or obtain direct benefits from a contract by means other than a lawsuit," and, in "some cases, a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself. " *Id.*

Given all the factors that went into the *Weekley* court's decision compelling arbitration of the non-signatory plaintiff's tort claim demonstrates that applying direct-benefits estoppel to compel arbitration of a tort claim that does not rely upon—or require reference to—the contract containing the arbitration clause is the exception, not the rule. And Rocha's is not such an exceptional claim.

The dealership insists that because Rocha referred to the vehicle her husband purchased as "my car," she has judicially admitted that she was the primary driver and, thus, a beneficiary of the contract between her husband and the dealership. Without regard for whether the record supports this inference, *Weekley* would not bind her to the arbitration clause in her husband's contract merely because she drives the car. In fact, the *Weekley* court took pains to point out that the plaintiff in

18

that case "had not merely resided in the home." *Id*. at 133. In addition, she (1) claimed authority under her father's purchase contract, (2) directed Weekly on custom features and "repeatedly demanded extensive repairs, (2) "personally requested and received" reimbursements from Weekley, and (3) conducted settlement negotiations with Weekley. *Id*. In addition, the supreme court noted that plaintiff's father and the family trust sued "on claims which are explicitly based on the contract." *Id*. Given that the plaintiff is co-trustee and sole beneficiary of the family trust, the court expressed concern that allowing her to avoid an arbitration clause that the trust was bound by when she was the sole beneficiary of the trust would allow policies favoring arbitration to be thwarted. *Id*. at 135.

Nonetheless, the court cautioned that direct-benefit estoppel does not "apply when the benefits alleged are insubstantial or indirect,"; rather a non-signatory must seek "substantial and direct benefits from the contract." *Id*. at 134. It was the plaintiff's "prior exercise of other contractual rights and her equitable entitlement to other contractual benefits" in *Weekley* that prevented her from avoiding the arbitration clause. *Id*.

While the dealership makes much of the fact that Rocha was only at the dealership because warranty work was being performed on her husband's vehicle, the dealership's duty to keep its premises safe (1) is unrelated to whether someone

19

brings in their own car or another person's car for repair, and (2) is unrelated to whether the repair work is paid for or is free (pursuant to a warranty provided by that dealership or by a manufacturer's warranty on a vehicle purchased at that dealership or a different dealership). In *EnGlobal U.S.. Inc. v. Gatlin*, the court rejected the argument that direct-benefits estoppel applied to compel arbitration of plaintiff's premises liability claim against a company whose control over the premises was pursuant to a contract containing a TAA arbitration clause. 449 S.W.3d 269, 280 (Tex. App.—Beaumont 2014, no pet.) The court reasoned that a non-signatory to a contract "cannot be compelled to arbitrate on the sole ground that, but for the contract containing the arbitration provision, [the plaintiff] would have no basis to sue" in tort. *Id*. (citing *Kellogg*, 166 S.W.3d at 740). The *Gatlin* court also rejected the argument that the plaintiff's negligent-undertaking claim was subject to arbitration for similar reasons. *Id*. at 282 ("The fact that the [non-signatory plaintiff's] negligent undertaking claim may 'relate to' the MSA [containing the arbitration clause] in the sense that [the defendant] would not have performed the undertaking but for the MSA does not, in itself, bind [the plaintiff] to the arbitration clause in the MSA.").

The dealership cites no cases other than *Weekley* in support of its claim that Rocha's personal injury claim is subject to arbitration. And our own research has not revealed any cases applying direct-benefits estoppel to compel arbitration of a

20

non-signatory's personal injury claim that has such an attenuated and gratuitous connection to the contract under which the defendant seeks to compel arbitration. The trial court abused its discretion by concluding Rocha was bound by the arbitration clause. Thus we need not reach the issue of whether her personal injury claim would fall within the scope of the arbitration clause were she bound by it.

## CONCLUSION

We deny the dealership's motion to dismiss the portion of Rocha's appeal challenging the trial court's order compelling arbitration. We vacate the trial court's dismissal of Rocha's claims, reverse the trial court's order compelling Rocha to arbitrate her claims, and remand the cause to the trial court for further proceedings.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.