**Opinion issued February 19, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00229-CV

————————————

**BONTERRA AT CROSS CREEK RANCH COMMUNITY ASSOCIATION, INC.; DARLING HOMES OF TEXAS, L.L.C, AVH DFW, L.L.C.; W.L.H. COMMUNITIES—TEXAS, L.L.C; TAYLOR MORRISON, INC.; AND TAYLOR MORRISON OF TEXAS, INC., Appellants**

**V.**

**MARIE LAUGHLIN AND STEVEN MARINCHAK, INDIVIDUALLY, AND AS HEIRS OF THE ESTATE OF ANTOINETTE MARINCHAK (DECEASED) AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES, Appellees**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-42205**

---

## MEMORANDUM OPINION

Antoinette Marinchak died from an illness she allegedly contracted at her gated community's recreation center. Her children, Steven Marinchak and Marie Laughlin, brought wrongful death and survival claims against Bonterra at Cross Creek Ranch Community Association, Inc., Darling Homes of Texas, LLC; AVH DFW, LLC; WLH Communities—Texas, LLC, Taylor Morrison, Inc., and Taylor Morrison of Texas, Inc. (collectively, the appellants), alleging that the appellants failed to safely maintain the community clubhouse and its pool and spa.

The appellants moved to compel arbitration based on the arbitration clause in Antoinette's home purchase agreement. The trial court denied the motion to compel. We reverse and render the trial court's order and remand the case for further proceedings.

## Background

Bonterra at Cross Creek Ranch is an age-qualified, gated community in Fulshear, Texas. In 2018, Taylor Morrison of Texas sold Marie a home to be built in the community. The purchase agreement signed by the parties[1] contains an arbitration provision that applies to:

> [a]ny and all claims, controversies, breaches or disputes by or between the buyer and seller, arising out of or related to this purchase agreement, the property, the community, the sale of the property by seller, or any transaction related hereto, whether such dispute is based on contract

---

[1] Both Antoinette and Steven signed the purchase agreement. Marie did not.

2

tort, statute, or equity, including, without limitation, any dispute over: (a) the disposition of any deposit; (b) breach of contract: (c) negligent or intentional misrepresentation or fraud; (d) nondisclosure, (e) breach of any alleged duty of good faith and fair dealing; (f) allegations of latent or patent design or construction defects including without limitation any claims for damages pursuant to the Texas Residential Construction Liability Act (Chapter 27 of the Texas Property Code); (g) the property, including, without limitation, the planning, surveying, design, engineering, grading, specifications, construction or other development of the property or the community, (h) deceptive trade practices (i) the limited warranty, or (j) any other matter arising out of or related to the interpretation of any term or provision of this purchase agreement, or any defense going to the formation or validity of this purchase agreement, or any provision of this purchase agreement, including deposit disputes, this arbitration provision, allegations of unconscionability, fraud in the inducement, or fraud in the execution, whether such dispute arises before or after closing (each a "dispute"), shall be arbitrated pursuant to the Federal Arbitration Act . . . .

The purchase agreement states that it was "binding on buyer and seller and their respective heirs, executors, administrators and successors." Further, "buyer and seller expressly agree[d] . . . that this purchase agreement involves and concerns interstate commerce and is governed by the provisions of the Federal Arbitration Act . . . , to the exclusion of any different or inconsistent state or local law, ordinance, regulation, or judicial rule."

The purchase agreement also expressly incorporates by reference a "community disclosure addendum," which explains that the buyer will "automatically become a member" of the community homeowner's association and generally describes rights, responsibilities, fees, assessments, and use restrictions

3

that apply to the homeowners. The addendum contemplates the development of various amenities and recreation facilities in the community, including:

> [an] approximately 10,000 square foot clubhouse with lifestyle director, stimulating activities and events just for members, lagoon-style pool, hike and bike trails, pickle and bocce ball courts. . . . Homeowners of Lots within Bonterra at Cross Creek Ranch will have trail access and privileges to all Cross Creek Ranch amenities and recreation facilities.

Steven and Marie brought wrongful death and survival claims against the appellants, alleging that their mother died as a result of Legionnaire's Disease, which she contracted at the community recreation center in 2023 while using the clubhouse facilities. According to Steven and Marie, the appellants owned, operated, managed, inspected, maintained, and developed the community clubhouse, its pool, and its water systems and all equipment associated with the water systems and were responsible for their purchase, installation, maintenance, testing, control, service, repairs, and monitoring.

In their motion to compel arbitration, the appellants argued that Steven and Marie were bound by the purchase agreement's arbitration provision because their claims were derivative of Antoinette's rights under Texas law. They also asserted that "Taylor Morrison of Texas can enforce the arbitration provision in its capacity as Seller, and as explained below, the Taylor Morrison Defendants can enforce the provision in their capacity as entities affiliated with and related to Seller, while [Bonterra] can enforce the provision in its capacity as an entity related to Seller."

4

And the appellants noted that in both the survival and wrongful death claims, Steven and Marie would need to prove the "same nucleus of facts" involving the circumstances of Antoinette's alleged infection with Legionnaires' Disease at the community recreation center and improper actions by the appellants that allegedly caused the infection.

In their response, Steven and Marie maintained that the purchase agreement's arbitration provision did not cover their claims because it did not mention personal injury or wrongful death claims. They also argued that the arbitration agreement was not valid as to those claims under the Texas Arbitration Act (TAA) because it was not signed by an attorney representing Antoinette.

The appellants replied that the arbitration provision expressly covered "any and all" claims, whether they were "based on contract, tort, statute, or equity" and requires arbitration of such claims "related to . . . the Community." "Tort claims" include wrongful death and personal injury claims. As to Steven and Marie's argument about the TAA's signature requirement, the appellants pointed out that because the arbitration provision was governed by the Federal Arbitration Act (FAA), the TAA's signature requirement was preempted and did not affect the arbitration provision's validity. Further, Steven and Marie's wrongful death and personal injury claims arise from Antoinette's use of the community center and thus

depend on her status as a homeowner in the community, which is derived from the purchase agreement and its arbitration provision.

The trial court denied the motion to compel arbitration.

## Standard of Review and Applicable Law

We review an order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115. Where, as here, an order denying a motion to compel arbitration does not state the grounds for the denial, we must affirm the order if any of the grounds asserted in the trial court for denying the motion are meritorious. *U-Haul Co. of Tex. v. Toro*, No. 01-22-00883-CV, 2023 WL 8262720, at *7 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.).

A party seeking to compel arbitration must establish that (1) a valid arbitration agreement exists and (2) the parties' dispute falls within the agreement's scope. *Rocha v. Marks Transp., Inc.*, 512 S.W.3d 529, 535 (Tex. 2016). If the movant satisfies this initial burden, the burden then shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *Id.* "Once the movant establishes

6

a valid arbitration agreement encompassing the claims at issue, a trial court has no discretion to deny the motion to compel arbitration unless the opposing party proves a defense to arbitration." *Id.*

## Analysis

In their sole issue, the appellants contend that the trial court erred in denying their motion to compel arbitration. We consider whether they met their initial burden and whether Steven and Marie proved any defense.

### A.    Validity

The parties generally agree that the arbitration agreement is valid, but they disagree about whether it could include a valid agreement to arbitrate personal injury claims because it was not signed by the parties' attorneys. The TAA applies to personal injury claims only if "(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney." TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3), (c). The FAA, though, has no such requirement. And if the FAA applies, it preempts the TAA's requirement of signatures by each party's attorneys. *See In re Nexion Health at Humble, Inc.* 173 S.W.3d 67, 69 (Tex. 2005).

The purchase agreement states that "buyer and seller expressly agree and acknowledge that this purchase agreement involves and concerns interstate commerce and is governed by the provisions of the [FAA] . . ., to the exclusion of

any different or inconsistent state or local law, ordinance, regulation, or judicial rule." Because the FAA governs here, the TAA's signature requirement has no application and thus has no effect on the validity of the arbitration agreement. *See id.*

## B. Scope

The appellants also assert that they satisfied their burden to establish that the scope of the arbitration provision encompassed Steven and Marie's claims. This is a question of law that we review de novo. *See Toro*, 2023 WL 8262720, at *12. In determining whether the claims at issue fall within the scope of the arbitration provision, we must focus on the facts alleged in the petition rather than the legal causes of action asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding); *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Generally, the claims will be arbitrable "if the facts alleged 'touch matters,' have a significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement." *Boring Co. v. 304 Constr., LLC*, No. 03-23-00394-CV, 2024 WL 2220716, at *7 (Tex. App.—Austin May 17, 2024, no pet.) (quoting *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding)).

"Under the FAA, a presumption exists favoring agreements to arbitrate." *Henry*, 551 S.W.3d at 115. Thus, we resolve any doubts about a valid arbitration agreement's scope in favor of arbitration. *See id.*; *Toro*, 2023 WL 8262720, at *12. "The presumption in favor of arbitration 'is so compelling that a court should not deny arbitration *unless it can be said with positive assurance* that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Henry*, 551 S.W.3d at 115 (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (emphasis in original)).

"Generally, when an arbitration provision uses the language 'any dispute,' it is considered broad." *Didmon*, 438 S.W.3d at 695. The purchase agreement's arbitration provision covers "[a]ny and all claims, controversies, breaches or disputes" between the buyer and seller, "arising out of or related to" the "purchase agreement, the property, the community, the sale of the property by seller, or any transaction related hereto, whether such dispute is based on contract tort, statute, or equity." Steven and Marie assert that the arbitration provision's reference to tort claims does not mean that their wrongful death and personal injury claims are included in its scope but cite no authority to support that assertion.[2] The provision's

---

[2] This Court reversed an order denying a motion to compel arbitration of a work-related personal injury claim under a benefits agreement with an arbitration provision containing similar language. *See H-E-B, LP v. Saenz*, No. 01-20-00850-CV, 2021 WL 4733460, at *1, 7 (Oct. 12, 2021, pet. denied) ("Partners

plain language shows the contrary: Steven and Marie's wrongful death and personal injury claims are tort claims related to the community.

The facts alleged in the petition confirm that Steven and Marie's claims fall within the arbitration provision's scope. According to the petition, Antoinette "lived in the community and went to the clubhouse and its facilities often." She allegedly contracted Legionnaire's Disease when she was "exposed to water vapors from the clubhouse, its pool and spa, and its other water systems located within the Bonterra at Cross Creek Ranch community." These facts "aris[e] out of or relate[] to" the purchase agreement and the community.

The cases that Steven and Marie rely on to argue otherwise are inapposite. *In re Weekley Homes, L.P.* involved "direct benefits estoppel," which generally requires a non-signatory to arbitrate a claim "if liability arises from a contract with an arbitration clause" or if the non-signatory "deliberately seeks and obtains substantial benefits from the contract." 180 S.W.3d 127, 130, 134 (Tex. 2005). A non-signatory is not required to arbitrate "if liability arises from general obligations imposed by law," such as tort claims, and not the contract. *Id.* The supreme court did not address whether a party's claims came within the scope of an arbitration clause.

---

agree that any and all disputes, claims (whether tort, contract, statutory, or otherwise) . . . .").

Here, the only non-signatory is Marie, and we need not consider whether direct benefits estoppel requires her to arbitrate claims because, as the appellants point out, Texas law otherwise requires her to do so. Wrongful death and survival claims are "entirely derivative of the decedent's rights." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 646 (Tex. 2009). So Marie, as one of Antoinette's beneficiaries, "still stand[s] in [her] legal shoes" and is bound by her agreement. *See id.* (citing TEX. CIV. PRAC. & REM. CODE §§ 71.003(a)).

Steven and Marie also cite to *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, which determined that parties could "designate state law to govern the scope of an arbitration clause in an agreement otherwise covered by the FAA." 141 F.3d 243, 247 (5th Cir. 1998). The Fifth Circuit then applied Texas law, in its 1998 iteration, for determining whether a medical services agreement required a surgeon to arbitrate his claims. *See id.* at 250. Because the purchase agreement is governed by the FAA, the analysis used in *Ford* does not apply here.

Steven and Marie raise no other defenses to arbitration. We conclude that the appellants satisfied their burden to establish that the claims at issue fall within the scope of the purchase agreement's arbitration provision.

For these reasons, we hold that the trial court erred in denying the appellants' motion to compel arbitration of Steven and Marie's claims. Thus, we sustain the appellants' sole issue.

11

## Conclusion

We reverse the trial court's order denying the motion to compel arbitration. We render judgment granting the motion to compel arbitration and ordering the referral to arbitration of the appellees' claims against the appellants. We remand this case to the trial court for further proceedings consistent with this opinion.


Clint Morgan
Justice

Panel consists of Chief Justice Adams and Justices Guiney and Morgan.